## NEGLIGENCE IN CROSSING STREET RAILWAY TRACKS.

[Circuit Court of Summit County.]

DAVID P. HARPHAM v. THE NORTHERN TRACTION COMPANY.

Decided, April Term, 1904.

*Negligence—Street Railways—Pedestrian Attempts to Cross Track without Looking for Car—Unobstructed View of Track for Several Hundred Feet—Gong not Sounded nor Fender Dropped—But Pedestrian Guilty of Contributory Negligence.*

Where a pedestrian attempts to cross a street car track without looking to see whether there is a car approaching, and is struck by a car and injured, and there is nothing to show that the company was guilty of willful or culpable disregard of duty after having observed his perilous situation, he is guilty of contributory negligence, and no liability attaches to the company, notwithstanding the gong was not sounded or the fender dropped.

McCARTY, J. (sitting in place of Winch, J.); HALE, J., and MARVIN, J., concur.

Error to the Court of Common Pleas of Summit County.

This cause comes into this court on a petition in error to reverse the judgment of the court of common pleas for alleged errors occurring in the trial of this case in that court. The action was brought to recover damages for the alleged negligence of the defendant below, and defendant in error here. It was tried at the April Term of the court in 1903, to a jury. On motion of the defendant at the conclusion of the testimony the jury were instructed to return a verdict for defendant, which it did, to which exceptions were taken. The cause of action stated in the petition below was as follows so far as I need read it herein:

At the date next hereinafter named the defendant owned and operated a line of street railway in the city of Akron in said county, and in and over the various streets and public ways thereof, and which said railway was then and there equipped with tracks, single as to some streets and double as to others, upon and over which tracks the defendant used cars for the carriage of its passengers, propelled by electricity as the motive power thereof. One of the streets so occupied and used by the defendant with its said tracks and cars moving on and over the

same, at said date, was East Market street, so-called, upon which at the point next hereinafter named the said defendant used and operated a double tracked railroad for its said purpose.  At a point on said East Market street two other public streets of said city, to-wit, Arlington street and Kent street, come into the same from the north and intersect it at a common center, and at which point there is a sharp descent on said East Market street from west to east.

Among the cars so owned and operated by the defendant, and propelled as aforesaid, at the date hereinafter named, was car No. 79, and which car was at the time provided and equipped with a gong or alarm, by the proper use of which the motorman in charge of the running of said car could warn travelers upon the highways and streets over which the same was run, against danger to be apprehended from coming in contact with said car, and which gong or alarm on said last named car was at the date next hereinafter named under the sole control of the said motorman engaged in running said car.  Said last named car was, at the date next herein named, also equipped and provided with an appliance called a fender, which was at the time in like manner under the exclusive control of the motorman then engaged in running said car.  Said fender was attached to the forward end of said car, extending across its entire front, and when not needed for the protection of travelers in dangerous proximity to said car the same was raised and suspended at some distance above the level of the said street car tracks.  But the said motorman could at will, and immediately in case of necessity, lower the same to or near the level of said tracks, and thus and thereby could catch or pick up any person who might be on said tracks in front of said car while in motion and hence in danger of being run over by the same, and carry such person safely and keep him from being run over by the wheels of said car, until the same could be stopped and such person rescued from peril.

It was the duty of said motorman in charge of said car to sound said alarm or gong at all times when travelers upon the streets of said city traversed by said car were, or were likely to be, upon or so near said tracks as to be in danger of coming in contact with said car while in motion, and to be vigilant and

watchful to discover and warn such travelers in time to avoid such danger of collision with said car, and to lower the said fender in all cases when the said car was in dangerous proximity to travelers upon said streets so traversed by said tracks, the use of electricity as a motive power in propelling such cars being the use of a highly dangerous agency upon streets and public thoroughfares traveled also by pedestrians, animals and vehicles.

On the 25th day of September, A. D. 1901, the plaintiff was lawfully upon said East Market street, and was then crossing the same from the southerly to the northerly side thereof, at or about the said point of intersection of Arlington and Kent streets with the same. At the same time said car No. 79, propelled as aforesaid, was coming down said hill on East Market street from west to east, in charge of the motorman and other agents and servants of said defendant, and equipped with the gong and fender aforesaid.

At the time the plaintiff was crossing said street, as aforesaid, there were congregated and moving around a watering trough located on the northerly side of said East Market street, at or near said point of intersection, and in and upon said East Market street, immediately in front of and near to the plaintiff at the time, a number of teams, wagons and carts, whereby he was obstructed from hearing the approach of said car No. 79, as it came down said hill, until too late to prevent or avoid its striking him, although he was not careless or heedless in that respect, and his not hearing the approach of said car was not owing to any negligence of his.

The said motorman in charge of the running of said car had a clear and unobstructed view of the track in front of him at the time, down said hill, for a long way before reaching the point where said car struck this plaintiff, and to and beyond such point. The plaintiff, without negligence on his part, and in the exercise of due and reasonable care for his own safety in crossing said East Market street, came upon said track of said defendant in front of said car at the time approaching him, but which he did not see or hear, for the reasons above set forth, in time to prevent his being struck by the same, and said car in coming down said hill then and thereupon struck this plaintiff and

knocked him down upon said tracks, and ran over him with its wheels, whereby his right leg was bruised, crushed, mangled and cut off below the knee, and by reason thereof he was thereafter compelled to have the same amputated above the knee.

The said motorman in charge of the running of said car as aforesaid, in the exercise of ordinary care, could have seen, and, the plaintiff says, did see him—that is to say, this plaintiff, upon the said tracks, in time to warn him by sounding said gong, so that he could have gotten off from said track, and so have avoided said collision. But wholly neglecting his duty in that respect the said motorman did not, nor did any other officer or servant of the defendant, sound said gong, or by outcry or otherwise warn or apprise the plaintiff of his dangerous position and proximity to said car at any time, nor did said motorman or any one check the speed of said car prior to its striking the plaintiff, but unlawfully and negligently ran into and injured him, as above set forth.

While said car was approaching the plaintiff as aforesaid, and even after its collision with him had become inevitable, the said motorman, seeing the plaintiff was upon said track in front of him, had time to lower said fender, and could have lowered it, and thereby could have caught the plaintiff and prevented him from going under the wheels of said car, whereby the latter could have saved his leg and escaped bodily injury. But the said motorman, knowing the premises, did not then lower said fender, or make any effort to do so, nor did any servant of the defendant, but he and they unlawfully and negligently omitted to lower the same.

To that petition the defendant filed an answer in which it says it admits it is a corporation organized and doing business as in the petition set out; admits that at or about the time and place named in the petition plaintiff met with some injury, but as to the exact particulars as to the cause, manner and extent of the injury this defendant is not fully advised and therefore can not admit, but denies each and every allegation in that behalf in the petition contained. And further answering, defendant denies each and every allegation in the petition contained not hereinbefore expressly admitted, and says that the plaintiff by his own negligence and want of care directly caused or directly contributed to such injuries as he sustained.

The case was tried upon the issues made in these pleadings on the evidence. The question whether the court was right in instructing the jury to return a verdict for the defendant involves an examination of the facts as disclosed by the record, so that the question is (1) Has the plaintiff shown that the defendant was guilty of the negligence charged in the petition, or some part of it, and, (2), was the plaintiff himself free from negligence contributing to the injury?

The situation was this: The defendant company was operating its street car No. 79 on its line in said city of Akron on one of the streets called East Market street, and on said street said defendant used and operated a double tracked railroad for its said purpose, and it is averred in the petition that said car which the defendant was operating on said street was equipped with a gong and also with an appliance called a fender, which said gong and fender were under the control of the motorman then engaged in running said car; that on the 25th day of September, 1901, the defendant was lawfully upon said Market street, and was then crossing the same from a southerly to the northerly side thereof at or about the point of intersection of Arlington and Kent streets with the same; at the same time said car 79 propelled as aforesaid was coming down said hill on said East Market street from west to east and was in charge of the motorman and other agents and servants of the said defendant, and equipped with a gong and fender as aforesaid; at the time plaintiff was crossing said street as aforesaid there was congregated and moving around a watering trough located on the northerly side of East Market street; at or near said point of intersection, and in and upon said East Market street immediately in front of and near to the plaintiff at the time, there were teams and wagons and carts, whereby he was obstructed from hearing the approach of said car as it came down said hill until too late to prevent or avoid its striking him, although he was not careless or heedless in that respect, and his not hearing the approach of said car was not owing to any negligence of his; that he was run down by said car and suffered the injuries of which he complains, namely, the loss of a leg and other painful injuries to his person.

So that the question involves the alleged negligence of the company in the operation of said car, and it also involves the

contributory negligence of the plaintiff in and about the happening of that accident, for it is fundamental and needs no citation of authorities to establish that the plaintiff was bound to use ordinary care for his own protection, and that ordinary care must be commensurate with and be the kind of care that persons situated as he was situated on that occasion are bound to exercise to protect themselves. While the company owed a duty to the public generally to run its cars carefully, so far as possible to avoid injury to others, it does not and did not absolve the plaintiff from the exercise of that degree of care that would protect him from danger. It is fundamental also that street railroads, as well as all other sorts of railroads, are entitled to the use of the streets and that pedestrians and others going upon the streets, using them, crossing them, and going along them, are bound to look so as to avoid possible injury.

The facts in this case show that the plaintiff could have seen the approaching car several hundred feet from where he was attempting to cross the track. He was crossing it diagonally, nothing to obstruct his vision for the distance named, and nothing intervened except a bicycle passed him, which he did not see until immediately after it had passed him, and no other thing or obstruction was in his way, so that his attention must have been directed to some object or objects in some other direction than the course the car was coming. It is perfectly clear from the testimony that had he looked he could have avoided the danger; it was but a step or two to get out of reach of the approaching car, and his failing to look when he should have looked was such contributory negligence on his part as would defeat a recovery even though the company had been, through its agents and employes, guilty of negligence on its part, except in one particular instance; that is, where the defendant seeing the danger and knowing that it was about to do the injury, could have avoided it by the exercise of proper care. In such case as that the failure and refusal of the company would have been willful and wanton, and in such case as that even though the plaintiff was guilty of contributory negligence the want of proper care on the part of the company would make it still liable even though the plaintiff was guilty of contributory neg-

ligence, and the action for damages would be for the injury sustained.

But there is nothing in this record that shows that the defendant was guilty of willful or culpable disregard of duty after having observed the perilous situation of the plaintiff, and there is nothing in this record that shows that it would have been possible for the motorman to have so controlled his car as to have avoided the injury after he became aware that it was about to occur. So that we are clearly of opinion ·that the defendant was not guilty of such negligence as would make it liable in any regard so that the plaintiff could not recover were he himself not guilty of negligence contributing directly in any degree to the injury. But we are clearly of the opinion that had the defendant been guilty of the want of ordinary care in the management of its car that the plaintiff so contributed to the injury that he could not recover.

The law seems to be well settled that a pedestrian in crossing a street car track is obliged to look before crossing the same, and that if he fails to do so and by reason of such failure is injured, he can not recover. This identical question was passed upon by a majority of this circuit court within the past year in the case of *The Cleveland Electric Railway Company* v. Wadsworth, in which case the court said:

"It is contributory negligence precluding a recovery for a passenger alighting at night from a street car to pass around the rear end of the car and attempt to cross a parallel track upon which cars are running in an opposite direction every three minutes, without looking in that direction, or checking his pace, or taking any precautions for his safety, he having knowledge of the surroundings and situation of the tracks and of the operation of the cars thereon."

It can not be said that the plaintiff was ignorant of the situation there. He had crossed that track many times a day for a number of years at least. He knew it was a double track; he knew that the cars run at that time of day every four or five minutes; he knew that one was liable to come along at any time; so that he was called on to at least look and use the ordinary precautions of getting out of the way, and that he did not do. He says himself, in answer to the question:

"Q.   You turned and walked down the street and then you turned and walked across the track? A.   No, sir; I did not say I walked across the street.

"Q.   Turned and walked across the track, and from the time you left that corner and walked down the street to where you turned into the street, and from the time you turned into the street until this car struck you, you never turned your eyes to the west in the direction of the coming car? A.   I did not.

"Q.   You never looked for the car? A.   I did not after that.

"Q.   You never looked for the car, I say? A.   I did not."

Upon his own testimony he is not entitled to recover in this lawsuit.   We are of opinion that the court below was right in directing the jury to bring in a verdict for the defendant.   The judgment of the court below will be affirmed with costs.   Exceptions noted.

*Grant & Sieber,* for plaintiff in error.

*Rogers, Rowley, Bradley & Rockwell,* for defendant in error.